UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

September 22, 2009

Iris Whiting, Esq.
P.O. Box 1457
12A Talbot Lane
Easton, MD  21601

Allen F. Loucks, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: Debora Howard v. Michael J. Astrue, Commissioner of Social Security, PWG-07-2365**

Dear Counsel:

Pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Debora Howard's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits("SSI"). (Paper Nos. 15,18,23).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary.  Local Rule 105.6.  For the reasons that follow, this Court **GRANTS** the Commissioner's Motion and **DENIES** the Plaintiff's Motion.

Debora Howard ("Claimant"), applied for SSI and DIB on August 1, 2003, alleging that she was disabled since August 22, 2003, due to her status post cervical laminectomy, chronic neck and back pain, fibromyalgia, depression, and chronic fatigue. (Tr. 55). Her claims were denied initially and upon reconsideration. (Tr. 29-31). A hearing was held before an Administrative Law Judge ("ALJ"), the Honorable Judith A. Showalter on July 5, 2006, where Ms. Howard appeared and testified.  The ALJ subsequently denied her claim in a decision dated September 9, 2006. (Tr. 14-23).  The ALJ found that although Claimant's degenerative disc disease of the cervical spine, fibromyalgia, and depression were "severe" impairments, as defined in the Regulations, they did not meet or medically equal any of the listed impairments ("the Listings") found in the

Regulations. (Tr. 16). The ALJ also determined that Claimant retained the residual functional capacity ("RFC") to perform a range of light work. (Tr. 18). The ALJ found that Claimant was not able to perform any of her past relevant work ("PRW"). However considering her age, education, work experience, RFC and after receiving testimony from a vocational expert("VE"),the ALJ determined there were jobs in the local and national economy that she could perform. Accordingly, the ALJ found that Ms. Howard was not disabled. (Tr. 23). On July 2, 2007, the Appeals Council denied Claimant's request for review, making her case ready for judicial review. (Tr. 5-8).

Claimant presents several arguments in support of her contention that the Commissioner's final decision is not supported by substantial evidence. Claimant argues that she meets Listings 1.04 and 12.04, and the ALJ improperly rejected the opinions of her treating physician and as a result erred in determining her RFC. *See* Plaintiff's Memorandum, pp. 7-23. For the reasons that follow, I disagree.

Claimant's primary argument is that the ALJ erred at step three of the sequential evaluation because she failed to find that Claimant's medical conditions were not of a severity that met, or medically equalled, the listed impairments for a musculoskeletal disorder defined in Listing 1.04 and an affective disorder defined in Listing 12.04. See Plaintiff's Memo. p. 7-16[1]

The Claimant argues that she meets Listing 1.04. The Commissioner argues that the record does not demonstrate the requirements to satisfy a finding of "limitation of motion of the spine, motor loss, and sensory or reflex loss" and that the ALJ's decision that Claimant did not meet Listing 1.04 is supported by substantial evidence and should be affirmed. *See* Defendant's Memorandum, pp. 11-12. After careful review of the record, I agree with the Commissioner.

The ALJ found that Claimant did not meet Listing 1.04 and, in relevant part, explained:
    ..."the Claimant's musculoskeletal impairments

---

[1] Claimant challenges the ALJ's step three analysis but fails to identify in any cogent fashion how the medical evidence meets subsections of the LOI that she argues should have been considered. Rather she recites what the Listings state. This does nothing to further Claimant's argument and the Court should not be forced to hunt for a needle in a haystack trying to determine what or/and how the evidence meets the listed criteria.

2

>have nor resulted in a compromise of a nerve
>root or spinal cord; spinal arachnoiditis, or
>spinal stenosis resulting in an inability to
>ambulate effectively in order to meet sections
>1.02A 1.04 A, B or C of the listings. She does
>not have findings on appropriate medically
>acceptable imaging of joint space narrowing,
>bony destruction or ankylosis of the affect
>joints." (Tr. 17).

In Subsection A, Listing 1.04 requires an "limitation of motion of the spine, motor loss, and sensory or reflex loss."  In this case, the medical documents of record --including those from Claimant's treating physician--indicate that she had good cervical and shoulder range of motion, normal motor strength and maintained intact sensory function and reflexes. (Tr. 190 198, 201, 269, 320). Therefore Claimant's argument that she meets Listing 1.04A is without merit.

With respect to Claimant's argument that she meets Listing 12.04 B, afer careful review of the record I find the ALJ's finding is supported by substantial evidence.  At the time of the ALJ's decision, Listing 12.04, in relevant part, provided as follows:

>12.04 *Affective Disorders*: Characterized by a
>disturbance of mood, accompanied by a full or partial
>manic or depressive syndrome. Mood refers to a
>prolonged emotion that colors the whole psychic life;
>it generally involves either depression or elation.
>**The required level of severity for these disorders is
>met when the requirements in both A and B are
>satisfied,** or when the requirements of C are
>satisfied...
>
> **B. Resulting in at least 2 of the following marked
>restriction in activities of daily living marked
>difficulties in maintaining social functioning marked
>difficulties in maintaining concentration persistence
>or pace or 1. Repeated episodes of decompensation,
>each of extended duration; or**
>*See* 20 C.F.R. Pt. 404, Subpt. P., App. 1.(As of April
>1, 2006)(emphasis added).

In his decision the ALJ stated that he considered the criteria the Listing. (Tr. 17).  Claimant does not cite -- nor does the undersigned find -- any evidence that Claimant met the subpart B criteria of the pertinent Listings.   Rather, she

3

suggests that because she received disability payments from her previous employment as a nurse with a County Health Department, this somehow constitutes evidence of repeated episodes of decompensation. *See* Plaintiff's Mem., p. 20.  The Regulations define "episodes of decompensation" as exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration persistence or pace.  "Repeated" means "three episodes within 1 year, or an average of once every four months, each lasting for at least 2 weeks.  *See* Introduction to Mental Disorders 12.00(emphasis added).  The evidence in Ms. Howard's records simply does not meet the definition.

Ms. Howard also argues that the ALJ improperly rejected the opinions of her treating physician, Dr. James DiCanio.  On October 13, 2003, Dr. DiCanio completed a Medical Report in which he stated, among other things, that due to her "inability to drive and inability to lift more than 5 lbs and inability to sit or stand for long periods of time" Claimant was "permanently disability for normal duties of her position." (Tr. 463).

The ALJ stated that she considered Dr. Dicanio's assessment, but gave it "limited weight" for several reasons.  The ALL noted that the assessment was 6 years old at the time of the ALJ decision, but more importantly, the ALJ concluded at it was not supported by the x-rays studies, office records, and conservative nature of his treatment, and ultimately found it was not supported by the objective medical evidence. (Tr. 19).

A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig* v. *Chater,* 76 F.3d 585 (4th Cir. 1996); *see also* 20 CFR §404.1527(d)(2).  While treating source opinions on issues reserved to the Commissioner--such as determining a claimant's RFC--are not entitled to controlling weight, the ALJ still must evaluate all of the evidence in the case record to determine the extent to which the opinion is supported by the record.  In this case, I find that the ALJ fulfilled this duty.  Contrary to Claimant's argument, I find that the ALJ adequately discussed Dr. DiCanio's opinions in her decision.  The ALJ specifically addressed Dr. DiCanio's opinions and in rejecting them, noted the evidence that Claimant had normal range of motion of the cervical and lumbar spine, normal motor strength and had been relatively stable. (Tr. 19).  This evidence was properly considered by the ALJ and I find the ALJ's findings are

4

explained adequately and are supported by substantial evidence.

    Thus, for the reasons given, this Court GRANTS the Commissioner's Motion for Summary Judgment and DENIES Claimant's Motion.  A separate Order shall issue.

                      Sincerely,

                      /s/
                      Paul W. Grimm
                      United States Magistrate Judge